Daniel O. Herrera (*pro hac vice* anticipated)
Nickolas J. Hagman (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

*Interim Co-Lead Counsel*

[Additional Counsel Listed on Signature Page]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| *In re Kannact, Inc. Data Security Incident* | Lead Case No. 6:23-cv-1132-AA |

**<u>PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. iii

FACTUAL BACKGROUND ...............................................................................................2

PROCEDURAL BACKGROUND .......................................................................................2

SETTLEMENT TERMS ......................................................................................................3

I.      Proposed Settlement Class .......................................................................................3

II.     Settlement Benefits – Monetary Relief ....................................................................3

III.    Class Notice and Settlement Administration ...........................................................5

IV.     Attorneys' Fees and Expenses .................................................................................6

V.      Service Awards to Representative Plaintiffs............................................................6

VI.     Release .....................................................................................................................7

ARGUMENTS AND AUTHORITY....................................................................................7

I.      The Settlement Satisfies Rules 23............................................................................8

      A.      The Settlement Class Satisfies Rule 23(a) ......................................................9

            i.      The proposed Settlement Class is sufficiently numerous ...........................9

            ii.     The proposed Settlement Class satisfies the commonality requirement......9

            iii.    The Representative Plaintiffs' claims and defenses are typical
                  of those of the Settlement Class............................................................10

            iv.     The Representative Plaintiffs will adequately protect the
                  interests of the Class .............................................................................11

            v.      The Class is ascertainable .......................................................................11

      B.      The Settlement Satisfies Rule 23(b)(3)..........................................................12

II.     The Court Should Preliminarily Approve the Settlement Under Rule 23(e)....................14

      A.      The Rule 23(e) Factors are Satisfied..............................................................16

        i.    The Representative Plaintiffs and Interim Class Counsel have adequately represented the Settlement Class ...............................................16

        ii.   The Settlement was negotiated at arm's length .........................................17

        iii.  The relief to the class is adequate .............................................................17

            a.   The costs, risks, and delay of trial and appeal .....................................18

            b.   The effectiveness of distributing relief to the class ............................20

            c.   The terms of the proposed attorneys' fees, including timing of payment.................................................................................................21

            d.   Any agreement required to be identified under Rule 23(e)(3).............21

        iv.  The Settlement treats class members equitably .........................................21

   B.    The Ninth Circuit's Factors are Satisfied.................................................................22

        i.    The Amount Offered in Settlement............................................................23

        ii.   The Extent of Discovery Completed and Stage of Proceedings.................24

        iii.  The Experience and Views of Class Counsel .............................................25

        iv.  Governmental Participants..........................................................................25

        v.    The Reaction of Settlement Class Members to the Proposed Settlement...................................................................................25

III.   The Court Should Approve the Proposed Notice Program................................................25

IV.  The Court Should Appoint EisnerAmper as Settlement Administrator............................28

V.   The Court Should Appoint Interim Class Counsel as Settlement Class Counsel ..............28

CONCLUSION.........................................................................................................................28

# **TABLE OF AUTHORITIES**

## CASES

*Adlouni v. UCLA Health Systems Auxiliary, et al.*,
  No. BC 589243 (Cal. Super. Ct. June 28, 2019).........................................................................23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)............................................................8, 12

*Butler v. Sears, Roebuck & Co*., 727 F.3d 796 (7th Cir. 2013) .....................................................12

*Calderon v. Wolf Firm*, 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) .......................................24

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................................7

*Cohorst v. BRE Props*., 2011 WL 7061923 (S.D. Cal. Nov. 9, 2011).........................................17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)....................................................................26

*Ellis v. Costco Wholesale Corp*., 657 F.3d 970 (9th Cir. 2011) .....................................................9

*Fox v. Iowa Health Sys*., 2021 WL 826741 (W.D. Wis. Mar. 4, 2021)........................................18

*Giles v. St. Charles Health Sys., Inc*., 294 F.R.D. 585 (D. Or. 2013)............................................9

*Gordon v. Chipotle Mexican Grill, Inc*., 2019 WL 6972701 (D. Colo. Dec. 16, 2019)..............18

*Grimm v. American Eagle Airlines, Inc.*, 2014 WL 12746376 (C.D. Cal. Sept. 24, 2014).........20

*Guy v. Convergent Outsourcing, Inc.*, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ............10

*Hammond v. The Bank of N.Y. Mellon Corp*., 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .....19

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...........................................................11

*Hartranft v. TVI, Inc*., 2019 WL 1746137 (C.D. Cal. Apr. 18, 2019) .........................................27

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) .....................................................................7

*Hillman v. Lexicon Consulting, Inc*., 2017 WL 10433869 (C.D. Cal. April 27, 2017)...............24

*In re Anthem, Inc. Data Breach Litig., No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018)* ..............23

*In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935 (9th Cir. 2011)..................................15

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ........................................... 26

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) .................................... 13

*In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) ................................................. 23

*In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023) .................................................................... 20

*In re Marriott International Customer Data Securities Breach Litigation*,
    341 F.R.D. 128 (D. Md. 2022) .......................................................................................... 20

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
    2023 WL 8247865 (D. Md. Nov. 29, 2023). .................................................................... 20

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ..................................... 22

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................... 22

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    2017 WL 2178306  (D. Minn. May 17, 2017) ..................................................................... 23

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
    2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ................................................................... 23

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    266 F. Supp. 3d 1, 19 (D.D.C. 2017) ................................................................................. 19

*In re Yahoo Mail Litig.*, 2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) ........................................ 6

*In re: Capital One Consumer Data Breach Litig.*,
    MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (E.D. Va. Aug. 29, 2022) .............................. 23

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) ............................................................... 10

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ......................................................................................... 13

*Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016) .................................................................. 20

*Meyer v Portfolio Recovery Assocs.*, 707 F.3d 943 (9th Cir. 2012) ............................................ 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................. 17

*Norton v. Maximus, Inc.*, 2017 WL 1424636 (D. Idaho Apr. 17, 2017) ....................................... 25

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046 (D. Or. 2014) ............................... 11

*Paredes Garcia v. Harborstone Credit Union*,
   2023 WL 4315117 (W.D. Wash. July 3, 2023) ........................................................ 22

*Pauley v. CF Entm't*, 2020 WL 5809953 (C.D. Cal. July 23, 2020) .............................................. 6

*Paz v. AG Adriano Goldschmeid, Inc.*, 2016 WL 4427439 (S.D. Cal. Feb. 29, 2016) ................ 18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .................................................................. 26

*Roe v. Frito-Lay, Inc.*, 2017 WL 1315626 (N.D. Cal. Apr. 7, 2017) ........................................... 22

*Russell v. Ray Klein, Inc.*, 2022 WL 1639560 (D. Or. May 24, 2022) ......................................... 14

*Spencer v. #1 A LifeSafer of Ariz., LLC*, 2019 WL 1034451 (D. Ariz. Mar. 4, 2019) ................ 27

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ............................................................... 13

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ................................................ 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................................... 9

*Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440 (D. Or. 1983) .................... 9

*Williams v. Oberon Media, Inc.*, 468 F. App'x 768 (9th Cir. 2012) ............................................. 11

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ................................. 13

**STATUTES**

Fed. R. Civ. P. 23(a) ................................................................................................... 9, 10, 11, 13

Fed. R. Civ. P. 23(b)(1) ........................................................................................................... 12

Fed. R. Civ. P. 23(b)(3) ........................................................................................................... 12

Fed. R. Civ. P. 23(c)(2) ........................................................................................................... 26

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................... 26

Fed. R. Civ. P. 23(e) .................................................................................................... 14, 15, 21

Fed. R. Civ. P. 23(e)(1)(A) ...................................................................................................... 15

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(A)–(D) ............................................................................ 15

Fed. R. Civ. P. 23(g)(1)(A)(i–iv) ......................................................................... 28

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................. 28

## OTHER AUTHORITIES

1 Newberg on Class Actions § 3:3 (5th ed.) ......................................................... 11

5 Newberg on Class Actions § 13:44 ..................................................................... 7

Manual for Complex Litigation (Fourth) (2004) § 21.63 ........................................ 8

Manual for Complex Litigation (Fourth) § 21.632 ............................................... 8, 9

Plaintiffs Terry Dukes, Ann Fongheiser, and Alan White ("Plaintiffs" or "Representative Plaintiffs") submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant Kannact, Inc. ("Kannact" or "Defendant") does not oppose certification of the Settlement Class[1] solely for purposes of effectuating the Settlement submitted for preliminary approval with this motion.

The Settlement follows extensive arms' length negotiations supervised by a respected, experienced mediator. Under the Settlement, Kannact will pay $700,000 into a non-reversionary common fund for the benefit of Plaintiffs and Settlement Class Members (the "Settlement Fund"). The Settlement Class Members will receive individual notice of the Settlement by direct email or U.S. mail. Every Settlement Class Member can make a claim for reimbursement of documented losses incurred as a result of the Data Security Incident, up to $5,000 or, alternatively, for a *pro rata* cash payment. Every Settlement Class Member is also entitled to three years of free credit monitoring and identity theft protection services, regardless of whether they make a claim for monetary benefits. In addition, Kannact has implemented or will implement certain reasonable steps to enhance the security of its systems and environments presently and in the future. Notice and Settlement Administration costs, as well as litigation expenses, attorneys' fees, and Class Representative service awards as awarded by the Court, will be paid out of the Settlement Fund.

Plaintiffs and Settlement Class Counsel strongly endorse the Settlement as an excellent result that is in the best interests of the Settlement Class, particularly given the substantial risks and delay associated with continued litigation. They thus respectfully submit that the Court should

---

[1] Capitalized terms herein have the same meaning as those set forth in the Parties' Settlement Agreement and Release (referred to herein as the "Settlement Agreement," "Settlement," or "S.A."), attached as Exhibit 1 to the Declaration of Nickolas J. Hagman ("Hagman Decl.").

grant preliminary approval and direct that notice be sent to the Settlement Class in accordance with the Settlement Agreement.

## FACTUAL BACKGROUND

Plaintiffs allege that on or around March 13, 2023, cybercriminals obtained access to Kannact's computer and information systems and potentially accessed personally identifying information, financial account information, and private health information (collectively "Private Information") belonging to Kannact's current and former patients and employees (the "Data Security Incident"). Specifically, Plaintiffs allege that the following categories of information were potentially compromised in the Data Security Incident, including, but not limited to: full names, email addresses, employee ID numbers, dates of birth, Social Security numbers, and medical and health insurance information. Kannact discovered this intrusion on March 13, 2023, and took steps to secure its systems. On August 23, 2023, Kannact sent notice of the Data Security Incident to 109,210 individuals.

## PROCEDURAL BACKGROUND

On August 3, 2023, Plaintiff Terry Dukes filed a putative class action complaint against Kannact concerning the Data Security Incident in this Court. Plaintiffs Ann Fongheiser and Alan White filed related actions on September 5 and 6, 2023, respectively. Dukes, Fongheiser, and White thereafter filed a joint motion to consolidate the three cases on September 21, 2023. On September 26, 2023, the Court granted consolidation and, on October 25, 2023, Plaintiffs filed their Consolidated Amended Class Action Complaint.

In January 2024, the Parties began settlement discussions. Shortly thereafter, the Parties agreed to attend a full-day mediation on February 27, 2024, before Judge Wayne Andersen (Ret.) of JAMS. Prior to the mediation, the Parties engaged in an informal exchange of information and

documents, and they presented their positions and arguments in confidential submissions to Judge Andersen. At the February 27, 2024, mediation, the Parties reached an agreement. This accepted settlement is memorialized in the Settlement Agreement attached to this motion. The parties promptly notified the Court of the Settlement in the Joint Status Report filed on March 1, 2024, and requested a stay of this matter until April 16, 2024.  On that date, the Parties filed another Joint Status Report, requesting that the Court extend the stay. The Court continued the stay of all deadlines in this matter until May 31, 2024.

## SETTLEMENT TERMS

### I.     Proposed Settlement Class

The Settlement will provide substantial relief for the Proposed Settlement Class, which is defined as "all persons in the United States whose information may have been impacted in the Data Security Incident, including persons to whom Kannact mailed a notification that their information may have been impacted in the Data Incident." Settlement Agreement ("S.A.") ¶ 1.32. The Settlement Class contains approximately 109,210 persons. Hagman Decl. ¶ 6.

### II.    Settlement Benefits – Monetary Relief

The Settlement negotiated on behalf of the Class provides a $700,000 non-reversionary Settlement Fund, from which Settlement Class Members may make a claim for the following benefits:

(a)     <u>Cash Award</u>. Settlement Class Members who submit a valid and timely Claim Form may elect to receive a payment (a "Cash Award"). The cash awards for all valid claimants shall be a *pro rata* share of the "Post Loss Payment Net Settlement Fund," which is effectively the remainder of the Settlement Fund after payment of: the cost of notice and administration; any attorneys' fees, expenses, and service awards approved by the Court; the cost of Credit Monitoring

and Insurance claimed by Class Members; and approved Documented Loss Payments. S.A. ¶¶ 2.2(a), 2.4.

(b)    *Documented Loss Payment*. In the event a Settlement Class Member does not elect a Cash Award, the Settlement Class Member may submit a claim for a Settlement Payment of up to $5,000 for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Settlement Class Member must submit an attestation regarding any actual and unreimbursed Documented Loss, and reasonable documentation that demonstrates the Documented Loss itself. S.A. ¶ 2.2(b).

(c)    Credit Monitoring and Insurance Services. Each Settlement Class Member who submits a valid and timely Claim Form may elect to receive three (3) years of Credit Monitoring and Insurance Services ("CMIS") regardless of whether they also make a claim for a Settlement Payment pursuant to Paragraph 2.2. The CMIS will have an enrollment period of twelve (12) months after the enrollment codes are sent to Class Members claiming this benefit. The CMIS will include the following services to be provided to each Settlement Class Member who submits a valid and timely Claim Form and elects the CMIS: (i) up to $1 million dollars of identity theft insurance coverage; (ii) three bureau credit monitoring providing notice of changes to the Settlement Class Members' credit profile; (iii) alerts for activity including new inquiries, new accounts created, change of address requests, changes to public records, postings of potentially negative information, and other leading indicators of identity theft; (iv) customer care and dedicated fraud resolution agent; (v) comprehensive educational resources; and (vi) extended fraud resolution.

### III.     Class Notice and Settlement Administration

Plaintiffs' Counsel contacted several leading class action claims administrators to seek bids for providing administrative services for this Settlement. Hagman Decl. ¶ 24. After thorough vetting of the proposals and comparing the cost efficiencies against the services provided, the Parties selected, and request that the Court approve, Postlethwaite & Netterville APAC, now known as EisnerAmper, as Settlement Administrator. S.A. ¶ 1.29. The Settlement Administrator will be responsible for providing notice to Settlement Class Members, maintaining a Settlement Website with all pertinent documents and deadlines, communicating with Settlement Class Members, reviewing and making determinations regarding claims, and disbursing settlement payments.

The Notice Program will be paid for from the Settlement Fund and has been designed to provide the best notice practicable, aiming to reach the greatest number of Settlement Class Members possible. Hagman Decl. ¶ 26. Notice will be given to the Settlement Class via direct, individual notice, by sending the Short Notice (S.A., Exhibit D) via email or U.S. mail to the postal addresses provided to the Settlement Administrator by Kannact. S.A. ¶ 3.3(c). The Long Notice (S.A. Exhibit B) will be posted on the Settlement Website, which the Settlement Administrator will establish prior to the dissemination of the Short Form Notice, along with other important documents, such as the Settlement Agreement and the motions for final settlement approval and for attorneys' fees, expenses, and service awards once they are filed. S.A. ¶ 3.3(b).

The notice documents, including the Short Notice and Long Notice, are based on models approved by courts in this District in data breach settlements. They are clear, concise, and directly apprise Settlement Class Members of all the information they need to know regarding how to make a claim, opt out, or object to the Settlement. Hagman Decl. ¶ 25. The timing of the Notice Program

will give Class Members adequate time to determine if they would like to submit a claim, opt out of, or object to the Settlement. In addition to the Settlement Website, a toll-free number with interactive voice responses will be established to address Class Members' questions and assist them with their options and with making claims under the Settlement. *Id*.

## IV.     Attorneys' Fees and Expenses

If the Settlement is preliminarily approved, Class Counsel will apply for an award of reasonable attorneys' fees and costs no later than 14 days prior to the opt-out/objection deadline. Pursuant to the Settlement Agreement, Settlement Class Counsel will seek an award of Attorneys' Fees and reasonable costs and expenses incurred in the Litigation, of no more than one-third of the Settlement Fund ($233,333.00). S.A. ¶¶ 7.1.-7.2.

## V.     Service Awards to Representative Plaintiffs

The Representative Plaintiffs in this case have played a crucial role in this matter, including by stepping up publicly to represent the other individuals impacted by the Data Security Incident and providing their Counsel with important information about the impact of the Data Security Incident. All Plaintiffs have been personally involved in the case and support the Settlement. Hagman Decl. ¶ 33. Plaintiffs will separately petition the Court for service awards of $1,500 for each Representative Plaintiff in recognition of the time, effort, and expense they incurred pursuing claims for the benefit of the Settlement Class. S.A. ¶ 7.4. Service awards in this range are commonly awarded in class action cases. *See, e.g.*, *Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *4 (C.D. Cal. July 23, 2020) (where the Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *In re Yahoo Mail Litig.*, No. 13-CV-4980, 2016 WL 4474612,

at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

## VI.    Release

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class Members who do not submit a valid and timely Opt-Out Request will be deemed to have "fully, finally, and forever released, relinquished, and discharged all Released Claims." S.A. ¶ 6.1. "Released Claims" are fully defined in Section 1.24 of the Settlement Agreement, and include all claims "based on, relating to, concerning or arising out of the Data Security Incident and alleged theft of other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation" other than claims relating to the enforcement of the Settlement Agreement and the claims of any Settlement Class Members who timely opted out of the class. S.A. ¶ 1.24. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (holding that a settlement "may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action . . . where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action").

## ARGUMENTS AND AUTHORITY

Federal Rule of Civil Procedure 23(e) requires court review and approval of any proposed class action settlement. Federal courts strongly favor and encourage settlements, particularly in class actions where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 5 Newberg on Class

Actions § 13:44 (recognizing judicial policies favoring settlement in class action cases and noting presumption that a proposed settlement is "fair in the presence of certain factors."). Handling claims like those at issue here through individual litigation would unduly tax the court system, require large expenditures of resources, and would be impracticable given the relatively small value of the claims of the individual members of the proposed class. The Settlement before the Court provides the best vehicle for Settlement Class Members to obtain the relief to which they are entitled in a prompt and efficient manner.

Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement, (2) dissemination of court-approved notice to the class with the opportunity for putative class members to opt out or object to the settlement, and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. Manual for Complex Litigation (Fourth) (2004) § 21.63.

Plaintiffs seek certification of a Settlement Class consisting of: "all persons in the United States whose information may have been impacted in the Data Incident, including persons to whom Kannact mailed a notification that their information may have been impacted in the Data Incident." S.A. ¶ 1.32. The Settlement Class includes approximately 109,210 persons.

I.  **The Settlement Satisfies Rules 23**

As part of its review of a proposed class settlement, the Court "should make a preliminary determination that the proposed class satisfies the criteria" of Rule 23. Manual for Complex Litigation (Fourth) § 21.632. In in evaluating a settlement, however, the Court does not consider trial manageability. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

A.    **The Settlement Class Satisfies Rule 23(a)**

Before assessing the parties' settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

i.    <u>The proposed Settlement Class is sufficiently numerous.</u>

In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 McLaughlin on Class Actions § 4:5 (15th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."). Numbering approximately 109,210 individuals, the proposed settlement class easily satisfies Rule 23's numerosity requirement. Joinder of so many individuals is clearly impracticable.

ii.    <u>The proposed Settlement Class satisfies the commonality requirement.</u>

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiff allege that here, "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016).

Plaintiffs assert that the common questions include whether Kannact failed to implement adequate data security measures; whether Class Members' Private Information was compromised in the Data Security Incident; whether Kannact owed a duty to Plaintiffs and Class members; whether Kannact breached its duties; whether Kannact's conduct was unfair; and whether Kannact unreasonably delayed in notifying Plaintiffs and class members of the material facts of the Data Security Incident. *See Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166, at *3 (W.D. Wash. Dec. 19, 2023) (allegations regarding defendant's "failure to safeguard their PII consistent with industry standards" satisfied commonality). Plaintiffs, accordingly, assert that they have met the commonality requirement of Rule 23(a).

iii.    The Representative Plaintiffs' claims and defenses are typical of those of the Settlement Class.

Plaintiffs assert they satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Kannact's alleged failure to protect the Private Information of Plaintiffs and all class members, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Assocs.*, 707 F.3d 943, 1041–42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their Private Information and that of the class was potentially compromised, and therefore they were impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *Convergent Outsourcing*, 2023 WL 8778166, at *3 (finding allegations that personal information was compromised in data breach satisfied typicality requirement); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class."). Thus, typicality is met.

iv.    The Representative Plaintiffs will adequately protect the interests of the
       Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis*, 657 F.3d at 985 (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiffs have no conflicts of interest with other Settlement Class Members, are not subject to unique defenses, and they and their counsel have vigorously prosecuted and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Class who assert they experienced the same alleged injuries and seek, like other Settlement Class Members, compensation for harm resulting from Kannact's data security shortcomings. There is no conflict of interest.

Further, Plaintiffs' counsel have decades of combined experience as zealous class action litigators, including in the area of data breach litigation, and are well suited to continue representing the Settlement Class. *See* Hagman Decl. ¶¶ 39-46; Exhibits 2-4 to Hagman Decl. Thus, Plaintiffs satisfy the adequacy requirement.

v.    The Class is ascertainable.

Rule 23 also requires, at least implicitly, that the members of the proposed class be objectively ascertainable. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc*., 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc*., 468 F. App'x 768, 770 (9th Cir. 2012) (quotation marks omitted) (alteration added). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co*., 308 F.R.D. 231,

237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 Newberg on Class Actions § 3:3 (5th ed.)). This requirement does not entail, however, that "every potential member . . . be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added). The purported class members have been identified through Kannact's records.

**B.    The Settlement Satisfies Rule 23(b)(3)**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), which requires that a district court determine that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation omitted). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Hanlon*, 150 F.3d at 1022. To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already

commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Plaintiffs' claims arise out of the same Data Security Incident and depend, first and foremost, on whether Kannact used reasonable data security measures to protect Settlement Class Members' Private Information. Plaintiffs assert that question can be resolved, for purposes of settlement, using the same evidence for all Settlement Class Members, and therefore is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) . . . .'") (citation omitted). Predominance for settlement purposes is accordingly met, as "the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's alleged] conduct.'" *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019) (citation omitted).

Class certification here is also "superior to other available methods for . . . fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(a)(4). Plaintiffs assert that classwide resolution is the only practical method of addressing the alleged violations at issue in this case. Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are complex, and the required expert testimony and document review are costly. *See Just Film*, 847 F.3d at 1123; *Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th

Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

No single member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and those of Settlement Class Members concern the same incident. Alternatives to a class action are either no recourse for over 100,000 individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to pursue individual legal redress. *Convergent Outsourcing*, 2023 WL 8778166, at *4 (finding class action superior for adjudication of data breach litigation "given the relatively small individual amounts likely at issue, the limited interest each class member likely has in directing the litigation, and the desirability in having one court resolve this legal and factual issue for all class members."); *see also Wolin*, 617 F.3d at 1175 (9th Cir. 2010); *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding class action method to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency"). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

## II.    The Court Should Preliminarily Approve the Settlement Under Rule 23(e)

For the Court to preliminarily approve a class settlement and to direct that notice be sent to class members, the parties must show that the Court "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Once certification is satisfied, the court evaluates the settlement pursuant to Rule 23(e) and may grant preliminary approval if it finds the settlement is 'fair, reasonable, and adequate.'" *Russell v. Ray Klein, Inc*., No. 1:19-CV-00001-MC, 2022 WL

1639560, at *2 (D. Or. May 24, 2022) (quoting Fed. R. Civ. P. 23(e)). "The parties must provide

the court with information sufficient to enable it to determine whether to give notice of the proposal

to the class." Fed. R. Civ. P. 23(e)(1)(A). If the parties make a sufficient showing that the Court

will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the

proposal," "[t]he court must direct notice in a reasonable manner to all class members who would

be bound by the proposal." Fed. R. Civ. P. 23(e).

To guide the inquiry into whether a settlement is "fair, reasonable, and adequate," Congress

codified four considerations:

> (A) [T]he class representatives and class counsel have adequately
> represented the class; (B) the proposal was negotiated at arm's length; (C)
> the relief provided for the class is adequate, taking into account: (i) the costs,
> risks, and delay of trial and appeal; (ii) the effectiveness of any proposed
> method of distributing relief to the class, including the method of processing
> class-member claims; (iii) the terms of any proposed award of attorney's
> fees, including timing of payment; and (iv) any agreement required to be
> identified under Rule 23(e)(3); and (D) the proposal treats class members
> equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D).

*Russell*, 2022 WL 1639560, at *5. The Ninth Circuit has also identified nine factors to consider in

analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the

plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel;

(7) the presence of a governmental participant; (8) the reaction of the class members to the

proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In*

*re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150

F.3d at 1026. In applying these factors, this Court should be guided by the general principle that

settlements of class actions are favored by federal courts. *See Class Plaintiffs*, 955 F.2d at 1276

(noting that "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### A.    The Rule 23(e) Factors are Satisfied

#### i.    The Representative Plaintiffs and Interim Class Counsel have adequately represented the Settlement Class.

Class Counsel are highly experienced in litigating complex class actions and are considered leaders in the field of data breach litigation. They have been appointed as lead or co-lead counsel on numerous data breach cases and were appointed by this Court to serve as interim class counsel. *See* Hagman Decl. ¶¶ 39-46; Exhibits 2-4 to Hagman Decl. Their professional experience, including in prosecuting similar class actions, enabled Counsel to provide exemplary representation for the Class in prosecuting claims and negotiating on the Class's behalf.

Upon learning of the data breach, Class Counsel engaged in a rigorous investigation before filing suit. Hagman Decl. ¶¶ 5-6. Class Counsel recognized the opportunity and potential benefit to the Class from an early negotiated resolution. Counsel worked with an experienced mediator and sought targeted informal discovery to facilitate and inform these negotiations. *Id*. ¶¶ 10-14.

Class Counsel's substantial experience with data breach litigation allowed them to negotiate for and reach a proposed settlement that is in the best interest of the Class. The proposed Settlement was negotiated between experienced attorneys for all Parties who are familiar with class action litigation in general and with the legal and factual issues of this case in particular. As detailed above, the Settlement was the result of months of extensive and arm's-length settlement negotiations with an experienced mediator. Hagman Decl. ¶¶ 11-13.

Likewise, Representative Plaintiffs have demonstrated their adequacy to represent the Class. Plaintiffs provided detailed information regarding the circumstances of the impacts they experienced after the Data Security Incident and greatly assisted Class Counsel with the investigation of the claims. Each of them has remained in contact with Counsel throughout the litigation, and each reviewed and approved the terms of the Settlement as being in the best interest of the Class. Hagman Decl. ¶ 33.

### ii.    The Settlement was negotiated at arm's length

The terms of the Settlement were negotiated at arm's length and included a full day mediation under the direction of the mediator Hon. Wayne Andersen (Ret.), who has extensive experience in mediating class actions, including data breach class actions. The negotiations were vigorously contested, were overseen by Judge Andersen, and were non-collusive. *See G. F. v. Contra Costa Cty*., No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props*., No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

### iii.    The relief to the class is adequate.

The relief offered to Class Members in the proposed Settlement addresses the types of repercussions and injuries arising from the Data Security Incident and is more than adequate under the factors outlined in Rule 23(e)(2)(C). Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and

adequate. Experienced counsel's judgment in this regard merits some deference. *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.") (citations omitted).

In evaluating the adequacy of a proposed settlement, the Court must take into account (i) the costs, risks and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

a.  <u>The costs, risks, and delay of trial and appeal</u>

While Plaintiffs believe they have strong claims, they also recognize success is not guaranteed. Class Counsel acknowledge the substantial risks and delays that would arise in continued litigation. This case involves a proposed class of approximately 109,000 individuals; the need to establish cognizable harm and causation; a complicated and technical factual overlay; and a motivated, well-represented Defendant that already has provided some relief to potentially affected individuals in the form of credit monitoring services. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

The chances of prevailing on the merits are uncertain—especially where significant unsettled questions of law and fact exist, which is common in data breach litigation. "Data breach litigation is evolving; there is no guarantee of the ultimate result." *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (citing *Gordon v. Chipotle*

*Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.")). Although nearly all class actions involve a high level of risk, expense, and complexity, the size and magnitude of the Data Security Incident in this case would have made continued litigation lengthy, complex, and difficult, and the rapid evolution of case law in this area of the law makes outcomes uncertain while increasing litigation expense. Given the obstacles and inherent risks Plaintiffs face with respect to their claims, including risks relating to class certification, summary judgment, and trial, the substantial benefits the Settlement provides favor preliminary approval of the Settlement. Hagman Decl. ¶¶ 36-37.

Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases). Even large cases implicating data more sensitive than that at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *rev'd*, 928 F.3d 42 (D.C. Cir. 2019). Moreover, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and uncertain of all class actions, making settlement a prudent path when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Class Counsel is unaware of a single data breach class action that has been tried to a jury. As in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which could result in zero recovery to the class and would further delay redress for the breach victims.

Finally, because Plaintiffs' case remains at the pleadings stage, the parties have not briefed, and the Court has not yet certified, any class treatment of the claims. If they were to proceed to litigate through trial, Plaintiffs would face risks in obtaining and maintaining certification of the class, which Defendant would likely oppose in the absence of a settlement. Thus, Plaintiffs "necessarily risk losing class action status" at any time following certification. *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014); *see also Mazzei v. Money Store*, 829 F.3d 260, 265–67 (2d Cir. 2016) (class decertified after trial).

While Plaintiffs believe their claims are well suited for class certification, numerous obstacles to certification exist. For example, in a recent data breach case where classes were contested but ultimately certified, *In re Marriott International Customer Data Securities Breach Litigation*, 341 F.R.D. 128 (D. Md. 2022), the classes were decertified on appeal. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir. 2023).[2] The relative absence of trial class certification precedent in the relatively novel data breach setting adds to the risks posed by continued litigation.

b.  The effectiveness of distributing relief to the class

Subject to Court approval, the Parties have agreed to retain EisnerAmper, an experienced and competent settlement and claims administrator familiar with handling data breach settlements. The 109,210 Settlement Class Members are specifically identifiable from Kannact's records, and

---

[2] To complete the story, the classes were re-certified by the district court on remand. *See In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29, 2023). Further emphasizing the point, however, *Marriott* was filed over five years ago, and has yet to proceed anywhere near trial.

notice of the Settlement and its terms will be individually mailed to each of them. The Settlement

Administrator is tasked with reviewing and determining the validity of submitted claims and will

provide Settlement Class Members with an opportunity to correct any deficiency submissions.

Credit monitoring (CMIS) codes will be distributed within thirty (30) days of the Effective Date.

S.A. ¶ 8.2. Settlement Class Members will receive payments for approved claims for cash relief

using their preferred method (i.e. check or some form of electronic payment) within twenty-one

(21) days from the Effective Date. S.A. ¶ 8.3.  This process ensures that all Settlement Class

Members have an opportunity to seek relief, will have their claims assessed fairly by a competent

administrator, and will receive benefits in a timely manner. This factor supports a finding that the

Proposed Settlement is adequate.

c.   The terms of the proposed attorneys' fees, including timing of payment.

Pursuant to the Settlement Agreement, Class Counsel will seek up to $233,333.33 in fees,

in addition to the costs and expenses incurred in connection with the prosecution of this matter.

Any fee award is of course subject to Court approval. This fee award was not discussed until after

the substantive material terms of the Settlement were agreed upon by the Parties. Hagman Decl.

¶ 32. The Settlement provides for payment of attorneys' fees and expenses thirty (30) days after

the effective date of the Settlement. SA ¶ 7.5.

d.   Any agreement required to be identified under Rule 23(e)(3)

There are no additional agreements made in connection with the Settlement proposal.

iv.    The Settlement treats class members equitably.

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the Settlement treats all class

members equitably relative to each other. The Advisory Committee's Note to Rule 23(e)(2)(D)

advises that courts should consider "whether the apportionment of relief among class members

21

takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In determining whether this factor weighs in favor of approval, the Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Paredes Garcia v. Harborstone Credit Union*, No. 3:21-CV-05148-LK, 2023 WL 4315117, *5 (W.D. Wash. July 3, 2023) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not discriminate between any segments of the class, as all Settlement Class Members are entitled to the same relief. Each and every Settlement Class Member has the opportunity to make a claim for up to $5,000 in documented losses, or the opportunity to claim an alternative cash payment. All Settlement Class Member may also obtain three years of free three-bureau credit monitoring and identity theft protection services. While Plaintiffs will apply for service awards, an award of $1,500 per class representative is in line with awards granted in similar cases and is not out of proportion to the recoveries for other class members. *See, e.g.*, *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (approving service awards of $5,000).

**B.    The Ninth Circuit's Factors are Satisfied**

Most of the traditional factors recognized by the Ninth Circuit for determining settlement approval are encompassed within Rule 23(e)'s considerations, including (i) strength of the Plaintiffs' case, (ii) the risks, expenses, complexity, and duration of continuing litigation, (iii) the risks of maintaining a class through trial and appeal, and (iv) absence of collusion. To the extent

not already addressed above, this proposed settlement also meets the Ninth Circuit's factors. *See Hanlon*, 150 F.3d at 1026.

### i.    The Amount Offered in Settlement

Given the risks and uncertainties presented by continued litigation, the value of the Settlement strongly favors approval. The Settlement makes significant relief available to Settlement Class Members. Every Settlement Class Member may request three years of free three-bureau Credit Monitoring and identity theft protection services, a valuable benefit. Moreover, each Settlement Class Member is eligible to make a claim for $5,000 in reimbursements for Documented Losses, or an alternative cash payment, which will consist of a *pro rata* share of the net Settlement Fund after payment of costs of the Settlement (including the costs of carrying out the Notice Program and Claims Administration, any Attorneys' Fees and Expenses Award, any Service Award to Representative Plaintiff, and payments for claims for Documented Losses and Credit Monitoring).

This Settlement is a strong result for the Class, and is in line with other settlements in cases involving data breaches of similar scope. The $700,000 fund for a Settlement Class of approximately 109,000 people apportions out to approximately $6.41 per class member (assuming every class member claimed). This is significantly better than many approved data breach settlements—many of which provided per-class member recoveries of less than $1.[3] Because the

---

[3] *See, e.g.*, *Dickey's Barbeque Restaurants, Inc.*, Case No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person); *In re: Capital One Consumer Data Breach Litig.*, MDL No. 1:19md2915 (AJT/JFA) Doc. 2251 (E.D. Va. Aug. 29, 2022) (Memo in Support of Final Approval), page 1 ($190 million common fund settlement for a class of approximately 98 million, or $1.93 per person); *Adlouni v. UCLA Health Systems Auxiliary, et al*., No. BC 589243 (Cal. Super. Ct. June 28, 2019) ($2 million settlement in medical information data breach for approximately 4,500,000 class members; 44 cents per class member); *In re Anthem, Inc. Data Breach Litig*., No. 5:15-md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million settlement in medical information data breach for 79,200,000 class members; $1.45 per class member); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-MD02583, 2016 WL 6902351, at *7 (N.D. Ga. Aug. 23, 2016) & ECF No. 181-2

Settlement amount here compares favorably to that achieved in other settlements approved in similar cases, this factor weighs in favor of the Settlement's adequacy. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). Accordingly, this factor favors approval.

### ii. The Extent of Discovery Completed and Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiffs gathered information that was available regarding Kannact and the Data Security Incident—including publicly-available documents concerning announcements of the Data Security Incident and notice of the Data Security Incident to Plaintiffs and the Settlement Class. Hagman Decl. ¶¶ 5-6, 10, 12. Further, the Parties informally exchanged non-public information concerning the Data Security Incident and the size of the Class before and during the mediation and settlement negotiation process. *Id.* Kannact also provided confirmatory discovery as part of the Settlement. *Id*. This information gathering process adequately substituted for formal discovery (which would have been costly, and potentially depleted the amount of Defendant's funds available for a settlement), and Class Counsel's knowledge from decades of experience in similar types of privacy and data protection matters also enabled Class Counsel to represent the interests of class members without expending hundreds of hours and excessive financial resources to come up to speed. *See id.* "[T]he efficiency with which the Parties were able to reach an agreement need

---

¶¶ 22, 38 ($13 million settlement for approximately 40 million class members; 32.5 cents per class member); *In re Target Corp. Customer Data Sec. Breach Litig*., MDL No. 14-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million class members; 10 cents per class member); *In re LinkedIn User Priv. Litig*., 309 F.R.D. 573, 582 (N.D. Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per class member).

not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017).

In short, Plaintiffs entered the Settlement after being well informed about the strengths and weaknesses of this case, and they had sufficient information to conclude that the Settlement is in the best interest of the class.

### iii.  The Experience and Views of Class Counsel

As discussed, Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Hagman Decl. ¶¶ 39-46. Having worked on behalf of the proposed class since the Data Security Incident was first announced, evaluated the legal and factual issues, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel endorse the Settlement without reservation. *Id.* ¶¶ 36-37. The Court may accord a great deal of weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g.*, *Norton v. Maximus, Inc.*, No. 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho Apr. 17, 2017). Thus, this factor supports approval.

### iv.  Governmental Participants

There are no governmental participants in this matter. This factor is neutral.

### v.  The Reaction of Settlement Class Members to the Proposed Settlement

The Representative Plaintiffs all support the Settlement. Plaintiffs will update the Court as to the response of the Class to the Settlement after notice has been given. *Id.* ¶ 27.

## III.    The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.* Such notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019).

Here, and after a competitive bidding process, the parties have agreed to a robust Notice Program to be administered by a well-respected third-party Settlement Administrator—EisnerAmper—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member by email or U.S. mail. Prior to sending the Short Notice, EisnerAmper will check all mailing addresses against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information is up-to-date and accurately formatted for mailing.[4] Notices that are returned as undeliverable will be re-sent to forwarding

---

[4] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records, including names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery-point-coded addresses, for matches made to the NCOA file for individual, family, and business moves.

addresses, and skip traces will be used to find the current addresses of Settlement Class Members. S.A. ¶ 3.3(c).

The costs of administering the Settlement will be paid from the Settlement Fund. S.A. ¶ 3.3. The Notice Program and Claim Forms negotiated by the Parties are clear, concise, and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt out of the Settlement. S.A. Exs. A, B, and D.

The Administrator will also establish a dedicated Settlement Website that will allow Settlement Class Members to file an online Claim Form. In addition, the Settlement Website will include relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. S.A. ¶ 3.3(b). The Administrator will also establish a toll-free help line where callers will be able to hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Long Notice be mailed to them. *Id.* ¶ 3.3(e).

The Notice Program is reasonably calculated under all the circumstances to apprise Settlement Class Members of the pendency of the action and afford them an opportunity to present their objections. Plaintiffs' Counsel estimates that direct notice will reach at least 90% of the Settlement Class. Hagman Decl. ¶ 26. Because the Notice Program upholds Settlement Class Members' due process rights, the Court should approve it. *See Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019); *Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019)

(preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights").

## IV.     The Court Should Appoint EisnerAmper as Settlement Administrator

In connection with the implementation of the Notice Program and administration of the Settlement benefits, the Parties respectfully ask that the Court appoint EisnerAmper to serve as the Settlement Administrator. EisnerAmper is a well-respected third-party administrator with a trusted and proven track record of supporting class action administration. Hagman Decl. ¶ 24.

## V.     The Court Should Appoint Interim Class Counsel as Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Settlement Class Counsel have extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Hagman Decl. ¶¶ 39-46. The Settlement they negotiated on behalf of the class confirms their adequacy. Accordingly, the Court should appoint Cafferty Clobes Meriwether & Sprengel LLP, Milberg Coleman Bryson Phillips Grossman PLLC and Siri & Glimstad LLP as Settlement Class Counsel.

## CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that will provide Settlement Class Members with significant monetary and equitable relief. For all the above

reasons, Plaintiffs respectfully request this Court grant Plaintiffs' Motion preliminarily approving the Settlement and direct that Notice be sent to the Settlement Class.

DATE: May 16, 2024                                    Respectfully submitted,

By: */s/ Nickolas J. Hagman*
Daniel O. Herrera (*pro hac vice* anticipated)
Nickolas J. Hagman (admitted *pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866.252.0878
*gklinger@milberg.com*

Mason A. Barney (*pro hac vice* anticipated)
Tyler J. Bean (*pro hac vice* anticipated)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

Kim D. Stephens, P.S., OSB #030635
Kaleigh N. Boyd (admitted *pro hac vice*)
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101-3147
Tel: (206) 682-5600/Fax: (206) 682-2992
kstephens@tousley.com
kboyd@tousley.com

*Interim Liaison Counsel*